IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>STEVEN CHRISTOPHER GIBSON,<br>[DOB: 10/03/1992]<br><br>                Defendant. | No. 24-03081-01-CR-S-MDH<br><br>**COUNT 1:**<br>*Conspiracy to Commit Wire Fraud*<br>18 U.S.C. §§ 1349 & 1343<br>NMT 20 Years Imprisonment<br>NMT 3 Years Supervised Release<br>NMT $250,000 Fine<br>Class C Felony<br><br>**COUNT 2:**<br>*Wire Fraud*<br>18 U.S.C. § 1343<br>NMT 20 Years Imprisonment<br>NMT 3 Years Supervised Release<br>NMT $250,000 Fine<br>Class C Felony<br><br>**COUNT 3:**<br>*Aggravated Identity Theft*<br>18 U.S.C. § 1028A<br>NLT 2 Years Imprisonment<br>Consecutive to Other Counts of Conviction<br>NMT $250,000 Fine<br>NMT 1 Year Supervised Release<br>Class E Felony<br><br>**FORFEITURE ALLEGATIONS:**<br>18 U.S.C. §§ 981(a)(1), 982(a), 28 U.S.C. § 2461, and 21 U.S.C. § 853 |

# INFORMATION

## THE UNITED STATES ATTORNEY CHARGES THAT:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

1. Defendant STEVEN CHRISTOPHER GIBSON ("GIBSON") prior to March of 2019, was an enlisted service member of the United States Army.

2. Prior to his discharge, GIBSON held the rank of E-4 Specialist.

3. GIBSON joined the United States Army on July 25, 2016.

4. Ultimately, in March 2019, GIBSON was discharged from the United States Army.

5. Between March 2019, and December 2023, GIBSON had several different phone numbers assigned to him that he utilized to contact active members of the United States Armed Forces in direct connection of the scheme set forth below.

6. GIBSON resided in an around the area of Chicago, Illinois, and elsewhere outside the state of Missouri.

7. GIBSON also had several "handles" that were assigned to him through various cash applications from which he received cash transfers, including but not limited to "Zelle," "CashApp," and "Apple Pay."

8. "Handles" are assigned by a cash application to specific users of the application so that transactions and wire transfers can be directed to and from a specific individual utilizing the cash application.

9. GIBSON used several financial institutions to obtain monies that were transferred to him through various cash transfer applications, including but not limited to Bancorp Bank, Sutton Bank, Choice Financial Group, and PNC Bank.

10. GIBSON obtained contact information of individuals serving in one of the United States Armed Forces' branches by utilizing social media websites and communicating with service members to obtain their phone number.

11. On various social media sites, GIBSON would use the image of a female enlisted service member. The female service member was a live person known as J.L.F. At the time of this scheme, J.L.F. was a member of the armed services, was a real person. GIBSON used the image of J.L.F. to get service members to return his contact efforts made through social media sites.

12. After communicating with armed service members through various social media websites, GIBSON, representing himself as a current military member, used the contact information provided by the service member to J.L.F. GIBSON then called these service members, portraying himself as a higher ranked, non-commissioned officer, claiming that the service member was owed backpay by the military, and he was contacting them to remedy the alleged discrepancy in their pay.

13. Fort Leonard Wood is a United States Army training installation located within Pulaski County, Missouri, and is located in the Western District of Missouri.

**The Scheme**

14. Beginning on an unknown date, but at least as early as October 1, 2019, and continuing to at least December 31, 2023, said dates being approximate, in Pulaski County, within the Western District of Missouri, and elsewhere, GIBSON fraudulently claimed that he was a first sergeant with the United States Army, and was contacting currently enlisted personnel with the United States Armed Forces falsely claiming they were owed backpay by the military.

3

15. GIBSON, working with others, known and unknown to the United States Attorney for the Western District of Missouri, utilized various social media websites to follow service members using another person's identity, the image and identity of J.L.F. under the guise of exploring a friendship or relationship.

16. After a service member responded to GIBSON'S or his co-conspirators' social media contact under the stolen identity of J.L.F., GIBSON then called the service member directly, claiming that he was a first sergeant with their military unit.

17. GIBSON claimed the service member was owed backpay. GIBSON advised that the procedure to receive backpay required the service member to deposit their last paycheck into a cash application account and send the money through the cash application to a handle of which GIBSON was in direct control.

18. As a result of GIBSON'S directions and misrepresentations, service members used cash applications to transfer their prior paycheck to a handle controlled by GIBSON.

19. The cash applications used by GIBSON involved causing wire transmissions that were sent through the Internet, as well as the cash applications, and the financial institutions through which the money was sent and receive]d by GIBSON.

20. GIBSON, through the various cash applications that he utilized, received the monies transferred to him by the service members under the false belief that they would receive this initial amount of money, plus backpay, in return, as falsely represented by GIBSON.

21. The monetary transfer from the service member to GIBSON used wire transmissions via the Internet, to send and receive cash payments from various locations, including but not limited to, Fort Leonard Wood.

4

22. Enlisted service members were told by GIBSON that they would receive backpay from the military if they complied with the express directions given to them by GIBSON, the service members would send prior paychecks through cash applications under a handle controlled by GIBSON under false pretenses and through misrepresentations in order to obtain the monies sent to him through the cash applications.

23. Due to GIBSON's misrepresentations, service members sent monies to GIBSON via wire transmissions under false pretenses in Pulaski County, Missouri, with the Western District of Missouri, and elsewhere, through various cash applications he was utilizing in and around the area of Chicago, Illinois, and elsewhere.

24. After transferring the monies as directed by GIBSON, service members never received any backpay, or the money from their last paycheck, as represented by GIBSON.

25. When service members attempted to contact GIBSON to have their original money returned, GIBSON refused to return the money and simply ignored the request of each service member defrauded of their monies.

## COUNT 1
### (Conspiracy to Commit Wire Fraud)

26. Paragraphs 1 through 25 of this Information are re-alleged and incorporated by reference as if fully set forth herein.

27. Beginning on an unknown date, but at least as early as October 1, 2019, and continuing through at least December 31, 2023, said dates being approximate, in Pulaski County, Missouri, in the Western District of Missouri, and elsewhere, the defendant, STEVEN CHRISTOPHER GIBSON, and other persons, known and unknown to the United States Attorney for the Western District of Missouri, did knowingly and willfully combine, conspire, confederate,

and agree with each other to commit offenses against the United States, that is having devised and intending to devise a scheme to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted, or caused to be transmitted, by means of wire communications in interstate commerce, writings, signs, and signals for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## Manner and Means of the Conspiracy

28. The ways, manner, and means by which the conspiracy was carried out included, but were not limited to the following:

29. Defendant GIBSON, working with known and unknown co-conspirators, contacted service members of the United States military, falsely claiming they were owed backpay from the United States military, such service members being located at Fort Leonard Wood and elsewhere.

30. In order to receive the backpay, GIBSON advised targeted service members to send money from a prior paycheck through various cash applications to a specific cash application handle that GIBSON controlled.

31. Upon receiving monies from service members through various cash applications, GIBSON kept the money for himself and never sent any backpay to the service members as he had falsely represented he would do. GIBSON then transferred the monies fraudulently obtained from the service members, through various cash applications, and deposited those monies into checking accounts that GIBSON held with various financial institutions.

32. The military service members never received any backpay, as falsely represented by GIBSON, and they did not receive any of the monies back that they previously sent to GIBSON. GIBSON used the monies he fraudulently obtained from service members for his own personal benefit.

33. Between October 1, 2019, through December 31, 2023, said dates being approximate, Defendant GIBSON issued thousands of false claims to various military service members, who were located at Fort Leonard Wood and elsewhere, while working with known and unknown co-conspirators, and then utilized the personal identifying information of the military service members to fraudulently obtain monies from cash application transactions that were sent because of GIBSON'S false representations made that the service members were owed backpay, when in truth and fact, GIBSON'S claims were entirely false, the service members were not owed back pay, and GIBSON was keeping the monies sent via various cash applications for himself and used for his personal benefit.

34. Between October 1, 2019, and through December 31, 2023, said dates being approximate, GIBSON, through the above-described scheme and conspiracy, received at least $300,000.00 in completed wire transactions through various cash applications. Each fraudulent transaction involved military service members misled by GIBSON, many of whom were located at Fort Leonard Wood, but also elsewhere. The monies received by GIBSON through this scheme and conspiracy were deposited by GIBSON into GIBSON'S bank accounts located throughout the country.

35. Between October 1, 2019, and December 31, 2023, said dates being approximate, GIBSON spent the entirety of these monies he fraudulently obtained from military service members for his own personal benefit. All in violation of Title 18, United States Code, Sections 1349 and 1343.

## COUNT 2
## (Wire Fraud)

36. Paragraphs 1 through 35 of this Information are re-alleged and incorporated by reference if fully set forth herein.

37. Beginning on an unknown date, but at least as early as October 1, 2019, and continuing until at least December 31, 2023, said dates being approximate, in Pulaski County, within the Western District of Missouri, and elsewhere, the defendant, STEVEN CHRISTOPHER GIBSON, with the intent to defraud, voluntarily and intentionally devised and executed the above-described scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, from certain individuals.

38. On or about July 7, 2021, said date being approximate, in Pulaski County, Missouri, in the Western District of Missouri, the defendant, STEVEN CHRISTOPHER GIBSON, for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted, in interstate commerce, by means of wire communication, wire and radio sounds, and signals, that is, the electronic wire transmission of monies through a cash application in the amount of $2,012.72, sent via facsimile over telephone wires originating from C.D. at Fort Leonard Wood, Pulaski County, Missouri, located in the Western District of Missouri, to GIBSON, through a cash application handle belonging to GIBSON, and then deposited into GIBSON'S personal bank account, located in Chicago, Illinois. All in violation of Title 18, United States Code, Section 1343.

Case 6:24-cr-03081-MDH   Document 2   Filed 08/08/24   Page 8 of 11

## COUNT 3
### (Aggravated Identity Theft)

39. Paragraphs 1 through 35 of this Information are re-alleged and incorporated by reference if fully set forth herein.

40. On or about July 7, 2021, in Pulaski County, Missouri, in the Western District of Missouri, the defendant, STEVEN CHRISTOPHER GIBSON, knowingly used, without lawful authority, means of identity and identification of another person, during and in relation to the offense of wire fraud as alleged in Count 2, in violation of Title 18, United States Code, Section 1343, namely the personal identifying information, including but not limited to, the image of another live person known as J.L.F., knowing that the image and means of identification belonged to another actual person. All in violation of Title 18, United States Code, Section 1028A(a)(1).

## FORFEITURE ALLEGATIONS

38. The allegations of Counts 1 and 2 of this Information are re-alleged and fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property, real and personal, in which the defendant has an interest, pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2), and Title 28, United States Code, Section 2461, and the procedures outlined in Title 21, United States Code, Section 853.

39. Upon conviction of any violation of Title 18, United States Code, Sections 1343 and 1349, the defendant shall forfeit to the United States any property, real or personal, constituting, or derived from, or traceable to proceeds the person obtained directly or indirectly pursuant to Title 18, United States Code, Sections 981(a)(1) and (a)(2).

40. Upon conviction of Counts 1 and 2 of this Information, the United States intends to pursue forfeiture of all property, real and personal, of STEVEN CHRISTOPHER GIBSON,

9

obtained, directly or indirectly, as a result, of the violations of law set out in Counts 1 and 2 of this Information and which constitutes, is derived from, and is traceable to the proceeds obtained directly or indirectly from the criminal conduct alleged in the charges.

41. Specifically, subject to forfeiture is a monetary judgment that constitutes the sum of the aggregate proceeds of the fraudulent scheme in United States currency that STEVEN CHRISTOPHER GIBSON received from the commission of the offenses alleged in Counts 1 and 2 of the Information in the amount of at least $300,000.00.

## SUBSTITUTE ASSETS

42. If the property described above as being subject to forfeiture as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other

10

property of the defendant up to the value of the above-forfeitable property or to seek return of the property to the jurisdiction of the Court so that the property may be seized and forfeited.

Respectfully submitted,

TERESA A. MOORE
United States Attorney

/s/ Patrick C.
PATRICK A. N. CARNEY
Assistant United States Attorney

DATED: 8/8/2024
Springfield, Missouri

11