IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN CHRISTOPHER GIBSON,<br><br>Defendant. | Case No. 24-03081-01-CR-S-MDH |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Teresa A. Moore, United States Attorney, and Patrick Carney, Assistant United States Attorney, and the defendant, Steven Christopher Gibson ("the defendant"), represented by Talmage Newton.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2. Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count 1 of the Information charging him with conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1349 and 1343. The defendant further agrees to and hereby does plead guilty to Count 2 of the Information charging him with wire fraud, in violation of 18 U.S.C. § 1343. Finally, the

defendant agrees to and hereby does plead guilty to Count 3 of the Information charging him with aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). The defendant also agrees to forfeit to the United States the property described in the forfeiture allegation. By entering into this plea agreement, the defendant admits that he knowingly committed these offenses and is in fact guilty of these offenses.

**3. Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which defendant is pleading guilty to are as follows:

> On March 24, 2022, William Tuffy, of the Verizon Security Team, contacted the Department of the Army – Criminal Investigations Division ("Army CID") and advised them that trainees waiting to attend Advanced Individual Training at Fort Leonard Wood, Pulaski County, Missouri, were being targeted as potential victims of a financial fraud by then unknown perpetrators. Fort Leonard Wood is a United States Army training installation located within Pulaski County, in the Western District of Missouri. Fort Leonard Wood is a place within the special maritime and territorial jurisdiction of the United States and is on land acquired for the use of the United States and under its exclusive jurisdiction.

> As a result of this report, agents with Army CID initiated an investigation. During that investigation, agents learned that the first known victim was armed service member V.D. V.D. reported that they had been contacted by an unknown First Sergeant. V.D. advised that the First Sergeant was contacting V.D. because V.D. was allegedly owed monies from the military for various reasons, such as not receiving a paycheck, or an error in pay over a period-of-time. V.D. stated that the First Sergeant claimed V.D.'s pay was messed up and that V.D. needed to send money through "CashApp" to the CashApp handle "Dfas101." V.D. stated that the First Sergeant advised that V.D. needed to send $607 through CashApp so that V.D. could receive backpay that included the amount sent by V.D., plus additional pay, which would ultimately fix the payment issue. V.D. told agents that they sent the $607 as instructed by the First Sergeant through a wire transmission that V.D. authorized between V.D.'s financial institution and the cash application specified by the First Sergeant to the handle "Dfas101."

> The initial wire transfer of money using the cash application by V.D. started at their financial institution at or near Fort Leonard Wood within the Western District of Missouri. The wire transfer of money was then sent to the cash application as directed by the First Sergeant utilizing the "Dfas101" handle that the First Sergeant had provided. Then the money was ultimately deposited into one of several bank accounts outside the state of Missouri. V.D. provided screenshots of

2

their messages, call history, and money transfer to the CashApp handle "Dfas101" to investigating agents. V.D. advised that V.D. sent the money as directed by the First Sergeant to the CashApp handle "Dfas101" but V.D. never received any backpay in return as represented by the First Sergeant and never received their $607 back either.

During their investigation, agents learned that the CashApp handle of "Dfas101," as well as the financial institutions used to deposit monies from the "Dfas101" handle belonged to the defendant, STEVEN CHRISTOPHER GIBSON ("GIBSON"). Records revealed that the owner of the CashApp accounts and phone numbers used to contact service members by impersonating a Senior Non-Commissioned Officer claiming to correct a backpay issue was also GIBSON. A federal search warrant of GIBSON'S iCloud backup revealed a direct connection with his phone numbers, Instagram account, CashApp account, Apple Pay account, and personal bank accounts with other individuals directly involved in the aforementioned financial fraud scam. Finally, additional records revealed that GIBSON had defrauded or attempted to defraud over 2000 service members of approximately $800,000, either through himself or his co-conspirators, in the same manner that was successfully carried out against V.D.

During the investigation, agents learned that when a victim of GIBSON'S fraud complied with the directions provided, money was sent using a wire transmission between the service member's bank account, and the cash application used by GIBSON to receive the money. In each and every incident, agents learned that the service members contacted by GIBSON were not owed backpay. GIBSON made false misrepresentations to coax service members into sending their money to a handle and financial institution controlled by GIBSON with the promise of a return of even more money, supposedly on behalf of the United States military as backpay. In each case, when the service member sent the requested money to GIBSON, they never received the backpay as was represented by GIBSON, and the initial money sent was taken without ever being returned.

GIBSON, either himself or through a co-conspirator, initially contacted service members, with an intent to defraud, through social media applications claiming to be a person interested in meeting the service member. GIBSON utilized the real image of another person, to wit: J.L.F., who at the time of this scheme, was a female service member with the United States armed service. In those instances where the service member responded to the social media contact, GIBSON, falsely portraying himself as J.L.F. would solicit additional information from the service member including their phone number. After receiving a positive response through the a social media site, GIBSON would then make a call claiming to be a non-commissioned officer of some type presenting the above stated false fraud backpay claim.

3

GIBSON initiated this fraud as early as October of 2019, and continued as recently as December 31, 2023. GIBSON'S fraud scheme targeted service members that were stationed at Fort Leonard Wood but he also targeted service members throughout the United States.

GIBSON obtained and used the personal image and identity of J.L.F. to mislead service members into providing their phone number. Upon receiving a service member's phone number, GIBSON would contact them falsely claiming to be a higher ranked non-commissioned office, claiming that backpay was owed to them. GIBSON then claimed that the service member was owed backpay and the service member needed to send their prior paycheck amount through a cash application to a "handle" provided by GIBSON, so that the backpay would be paid to the service member. GIBSON used that information with the help of co-conspirators, to obtain monies through cash application transfers between service members in Fort Leonard Wood and elsewhere, to GIBSON and his cash application account that was accessed and transferred into GIBSON'S personal bank accounts located in or around Chicago, Illinois.

GIBSON, while conspiring with others known and unknown to the United States Attorney for the Western District of Missouri, caused wire transmissions via the internet that transferred monies into his cash application accounts based on his material misrepresentation that the service member was owed backpay, they would receive their money back, and their actions in completing the cash application transaction would ensure that they received the backpay also claimed by GIBSON. Finally, law enforcement learned that at least 152 individual service members were defrauded by GIBSON in the same manner as noted in the aforementioned scheme. Agents determined that GIBSON and his co-conspirators have engaged in the same fraud scheme, resulting in actual fraud of more than $300,000 in cash that has been obtained via wire transmissions, sent as a result of misrepresentations, that crossed interstate boundaries between October 1, 2019, and December 31, 2023.

In addition to the aforementioned facts provided above, through the defendant's pleas of guilty in the instant case, he further admits that:

## COUNT 1
### Conspiracy to Commit Wire Fraud
### 18 U.S.C. §§ 1343, 1349

The fraud conspiracy set forth above was committed, beginning on an unknown date, but as early as October 1, 2019, and continuing through at least December 31, 2023, in Pulaski County, Missouri, in the Western District of Missouri, and elsewhere, when the defendant, STEVEN CHRISTOPHER GIBSON, with other persons known and unknown to the United States Attorney for the Western District of Missouri, did knowingly and willfully combine, conspire, confederate, and agree with each other to commit offenses against the United States, that is having devised and intending to devise a scheme for obtaining

4

money by means of materially false and fraudulent pretenses, representations, and promises, transmitted, or caused to be transmitted, by means of wire communications in interstate commerce, writings, signs, and signals for the purpose of executing the aforementioned scheme and artifice to defraud others. All in violation of Title 18, United States Code, Sections 1349 and 1343.

## COUNT 2
## Wire Fraud
## 18 U.S.C. § 1343

Further, beginning at least as early as October 1, 2019, and continuing until at least December 31, 2023, in Pulaski County, within the Western District of Missouri, and elsewhere, the defendant, STEVEN CHRISTOPHER GIBSON, with the intent to defraud, voluntarily and intentionally devised and executed the above-described scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, from certain individuals.

Specifically, on or about July 7, 2021, at Fort Leonard Wood, and elsewhere, the defendant, STEVEN CHRISTOPHER GIBSON, for the purpose of executing or attempting to execute the aforementioned scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted, in interstate commerce, wire and radio sounds, and signals, that is, the electronic wire transmission of monies through a cash application in the amount of $607.24, from V.D. at Fort Leonard Wood, Pulaski County, Missouri, located in the Western District of Missouri, to GIBSON, to his personal handle with the cash application and then into his personal bank account, located in the Chicago area of Illinois. All in violation of Title 18, United States Code, Section 1343.

## COUNT 3
## Aggravated Identity Theft
## 18 U.S.C. § 1028A

Finally, on or about July 7, 2021, said date being approximate, in Pulaski County, Missouri, in the Western District of Missouri, the defendant, STEVEN CHRISTOPHER GIBSON, knowingly used, without lawful authority, means of identification of another person, during and in relation to the offense of wire fraud as alleged in Count 2, in violation of Title 18, United States Code, Section 1343, namely the personal identifying information that included but is not limited to an image and identity of a live person, to wit: J.L.F., knowing that the means of identification belonged to another actual and live person, and he did not have permission to use the image of J.L.F. All in violation of Title 18, United States Code, Section 1028A(a)(1).

5

The defendant admits that the monetary proceeds in the forfeiture allegation were derived from proceeds he obtained from his conspiracy to commit wire fraud and wire fraud, as set out in Counts 1 and 2.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon his plea of guilty to Count 1 of the Information charging him with Conspiracy to Commit Wire Fraud, the maximum penalty the Court may impose is not more than 20 years of imprisonment, a $250,000 fine, three years of supervised release, a $100 mandatory special assessment, and an order of restitution. The defendant further understands that this offense is a Class C felony. Further, upon his plea of guilty to Count 2 of the Information charging him with Wire Fraud, the maximum penalty the Court may impose is not more than 20 years of imprisonment, a $250,000 fine, three years of supervised release, a $100 mandatory special assessment, and an order of restitution. The defendant further understands that this offense is a Class C felony. Finally, upon his plea of guilty to Count 3 of the Information charging him with Aggravated Identity Theft, the Court shall impose a mandatory penalty of not less than 2 years of imprisonment, to run consecutively to all other counts, a $250,000 fine, one year of supervised release, a $100 mandatory special assessment, and an order

6

of restitution. The defendant further understands that he cannot receive probation for a conviction for this offense and that such offense is a Class E felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up three years for Counts One and Two of the Information, respectively, and one year for Count Three; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

    d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to two years for Counts One and Two, respectively, and one year for Count Three of the Information without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three years for Counts One and Two, respectively, and one year for Count Three of the Information, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

    e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

    f. any sentence of imprisonment imposed by the Court will not allow for parole;

    g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office;

    h. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court;

7

Case 6:24-cr-03081-MDH  Document 8  Filed 08/08/24  Page 7 of 17

i. the defendant agrees that the United States may institute civil, judicial or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that he will not contest any such forfeiture proceedings.

j. the defendant agrees to forfeit all interests he owns or over which he exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p), including, but not limited to, the following specific property: a money judgment of $300,000.00. With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution;

k. the defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which he and his co-conspirators have or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period from 2019 to the present. The defendant also agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets;

l. the defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before his sentencing; and

m. within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that the United States will use the financial information when making its recommendation to the Court regarding the defendant's acceptance of responsibility.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses

8

related to the Information for which it has venue, and which arose out of the defendant's conduct described above.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

**8. Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any

9

recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **<u>Withdrawal of Plea</u>.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's pleas of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the pleas have been formally accepted by the Court, the defendant may withdraw his pleas of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his pleas of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his pleas of guilty.

10. **<u>Agreed Guidelines Applications.</u>** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

    b. The applicable Guidelines section that controls is U.S.S.G. § 2B1.1, which provides for a base offense level of 7;

    c. The parties may argue at sentencing any other applicable enhancements or reductions;

    d. The defendant has admitted his guilt and clearly accepted responsibility for his actions and has assisted authorities in the investigation or prosecution of his

10

own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(a) and (b) of the Sentencing Guidelines, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty pleas, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

e. The parties agree that the Court will determine the defendant's applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

f. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his pleas of guilty;

g. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed and waives any right to have those facts alleged in the Information. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

h. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11. <u>Effect of Non-Agreement on Guidelines Applications.</u>** The parties understand, acknowledge, and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

11

**12. Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

**13. Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

   a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

   b. comment on the evidence supporting the charges in the Information;

   c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

   d. oppose any post-conviction motions for reduction of sentence, or other relief.

**14. Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

   a. the right to plead not guilty and to persist in a plea of not guilty;

   b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

   c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

12

d. the right to confront and cross-examine the witnesses who testify against him;

e. the right to compel or subpoena witnesses to appear on his behalf; and

f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

### 15. Waiver of Appellate and Post-Conviction Rights.

a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

**16. Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

    a. The Court must order restitution to the victims of the offenses to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the Information which are to be dismissed and all other uncharged related criminal activity;

    b. Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, Defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

    c. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

    d. The defendant hereby authorizes the United States Attorney's Office ("USAO") to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

    e. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $300 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

    f. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

    g. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution,

14

and fines imposed by any criminal or civil judgment, and also collect 100% of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

**17. Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**18. Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**19. Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute,

15

Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

**20. Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys, or any other party to induce him to enter his pleas of guilty.

**21. No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

**22. Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any

drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Teresa A. Moore
United States Attorney

Dated: 8/8/2024

Patrick Carney
Assistant United States Attorney

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Information. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 8/8/2024

Steven Christopher Gibson
Defendant

I am defendant Steven Christopher Gibson's attorney. I have fully explained to him his rights with respect to the offenses charged in the Information. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Steven Christopher Gibson's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 8-8-2024

Talmage Newton
Attorney for Defendant

17